UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | CRIMINAL ACTION NO. |
| | ) | |
| Plaintiff, | ) | 3:23-CR-00041-S-1 |
| | ) | |
| v. | ) | |
| | ) | |
| GARRET ADAM MILLER, | ) | |
| | ) | |
| Defendant. | ) | |
| | ) | |

### DEFENDANT'S MOTION TO DISMISS INDICTMENT

Defendant, Garret Adam Miller, moves to dismiss the indictment pursuant to Federal Rule of Criminal Procedure 12(b)(3)(B), which charges possession of an unregistered short-barrel rifle firearm in violation of 26 U.S.C. §§ 5841, 5861(d), and 5871. This statute is facially unconstitutional under the Second Amendment, under the new standard set forth by the Supreme Court in *New York State Rifle & Pistol Ass'n, Inc. v. Bruen*, 142 S.Ct. 2111 (2022).

Rule 12(b)(3)(B)(v) of the Federal Rules of Criminal Procedure establishes that a court may dismiss a defective indictment for failure to state an offense where the indictment alleges the defendant violated an unconstitutional statute. "To warrant dismissal of the indictment, [the defendant] would need to demonstrate that the allegations therein, even if true, would not state an offense." *U.S. v. Thomas*, 367 F.3d 194, 197 (4th Cir. 2004) (*citing U.S. v. Hooker*, 841 F.2d 1225, 1227–28 (4th Cir. 1988) (en banc)).

### *Bruen* Establishes a New Standard for Second Amendment Review

The Second Amendment to the United States Constitution provides: "A well regulated Militia, being necessary to the security of a free State, the right of the people to keep and bear Arms, shall not be infringed." In *Bruen*, the Supreme Court clarified the appropriate standard for

analyzing Second Amendment claims. The Supreme Court held that lower courts had been incorrect in reading precedent to require a means-end analysis in evaluating Second Amendment claims. *Bruen*, 142 S. Ct. at 2129. Instead, the Court explained that *District of Columbia v. Heller*, 554 U.S. 570 (2008), held, "on the basis of both text and history, that the Second Amendment conferred an individual right to keep and bear arms" for self-defense. *Id.* at 2127 (quoting *Heller*, 554 U.S. at 595) (emphasis in original). Further, the Supreme Court emphasized that "*Heller* and *McDonald* expressly rejected the application of any" means-end scrutiny because "[t]he very enumeration of the right takes out of the hands of government—even the Third Branch of Government—the power to decide on a case-by-case basis whether the right is *really worth* insisting upon." *Id.* at 2129 (quoting *Heller*, 554 U.S. at 634; *see also McDonald v. City of Chicago*, 561 U.S. 742, 790–91 (2010)). In place of a means-end analysis, then, the Supreme Court stated the following standard for considering Second Amendment claims:

> When the Second Amendment's plain text covers an individual's conduct, the Constitution presumptively protects that conduct. The government must then justify its regulation by demonstrating that it is consistent with the Nation's historical tradition of firearm regulation. Only then may a court conclude that the individual's conduct falls outside the Second Amendment's "unqualified command."

*Id.* at 2129–30 (quoting Konigsberg v. State Bar of Cal., 366 U.S. 36, 50, n.10 (1961)).

In applying *Bruen*'s standard, courts must first address the threshold question of whether the Second Amendment's plain text protects the conduct that is being regulated. *Id.* at 2126, 2134. If it does, "the government must affirmatively prove that its firearms regulation is part of the historical tradition that delimits the outer bounds of the right to keep and bear arms." *Bruen*, 142 S.Ct. at 2127. This requires courts to "assess whether modern firearms regulations are consistent with the Second Amendment's text and historical understanding." *Id.* at 2131. Because "Constitutional rights are enshrined with the scope they were understood to have *when the people*

*adopted them*," *id.* at 2136 (*quoting Heller*, 554 U.S. at 634–35) (emphasis in original), the Second Amendment's "meaning is fixed according to the understandings of those who ratified it." *Id.* at 2132. Thus, in assessing "unprecedented societal concerns or dramatic technological changes" that could not have been anticipated by the Founders, "the historical inquiry that courts must conduct will often involve ... determining whether a historical regulation is a proper analogue for a distinctly modern firearm regulation." *Id.* at 2132. To that end, "whether modern and historical regulations impose a comparable burden on the right of armed self-defense and whether that burden is comparably justified are 'central' considerations when engaging in an analogical inquiry." *Id.* at 2133 (*quoting McDonald*, 561 U.S. at 767 (*quoting Heller*, 554 U.S. at 599)).

In light of those definitions and limits to the Second Amendment's protection, the Court addressed the threshold issue and determined that the law at issue—a complete ban on the possession of handguns—did implicate conduct protected by the Second Amendment, which prompted the Court's analysis of whether the regulation was in line with the Nation's history and tradition. *Id.* at 628. After conducting a historical analysis, the Court concluded the Second Amendment did not support the complete ban on handguns created by the regulation at issue, and, as such, the regulation was unconstitutional. *Id.* at 636.

### The National Firearms Act

The relevant part of the National Firearms Act (NFA) states: "It shall be unlawful for any person ... to receive or possess a firearm which is not registered to him in the National Firearms Registration and Transfer Record." 26 U.S.C. § 5861(d). The NFA further provides that "[a]ny person who violates or fails to comply ... shall, upon conviction, be fined not more than $10,000, or be imprisoned not more than ten years, or both." 26 U.S.C. § 5871. The NFA further provides:

> The term "firearm" means ... (2) a weapon made from a shotgun if such weapon as modified has an overall length of less than 26 inches or a barrel or barrels of less

than 18 inches in length; [and] ... (7) any silencer (as defined in section 921 of title 18, United States Code) .... The term "firearm" shall not include an antique firearm or any device (other than a machinegun or destructive device) which, although designed as a weapon, the Secretary finds by reason of the date of its manufacture, value, design, and other characteristics is primarily a collector's item and is not likely to be used as a weapon.

26 U.S.C.§ 5845(a).

Title 18 of the United States Code similarly provides definitions for the firearms cited in Indictment. The term " 'firearm' means (A) any weapon (including a starter gun) which will or is designed to or may readily be converted to expel a projectile by the action of an explosive; (B) the frame or receiver of any such weapon; (C) any firearm muffler or firearm silencer" not including an antique firearm. 18 U.S.C. § 921(a)(3). A "short-barreled shotgun" is "a shotgun having one or more barrels less than eighteen inches in length and any weapon made from a shotgun (whether by alteration, modification, or otherwise) if such weapon as modified has an overall length of less than twenty-six inches." 18 U.S.C. § 921(a)(6).

To lawfully possess the firearms identified by the NFA, the Act requires individuals to register their firearms in the NFRTR. 26 U.S.C. § 5841(b). To register, any "manufacturer, importer, [ ] maker" and transferor must file an application with the Secretary of the Treasury that includes: (1) the proper stamp evidencing payment of the $200 tax; (2) identification for the firearm to be registered; and (3) identification of the applicant (if the firearm is being transferred, the application must identify both the transferor and the transferee), including fingerprints and a photograph. 26 U.S.C. §§ 5811, 5812, 5821, 5822. However, the NFA establishes that the Secretary will deny an application if the making, transfer, receipt, or possession "of the firearm would place the person making the firearm [or the transferee] in violation of the law." 26 U.S.C. §§ 5812, 5822.

**Analysis**

It is undisputed that the firearm at issue falls within the definitions provided by the NFA for a short-barreled shotgun. It is also undisputed that Mr. Miller failed to register it with the NFRTR as required. However, Mr. Miller contends the Indictment must be dismissed because the charge violates the Second Amendment by regulating conduct that falls within its protection. Thus, the Court must determine whether, under the standard outlined in *Bruen*, the Second Amendment protects Defendant's right to possess a short-barreled shotgun.

The Supreme Court has held that short-barreled shotguns do not fall within the scope of the Second Amendment's protections. In *Miller*, the Court determined:

> In the absence of any evidence tending to show that possession or use of a 'shotgun having a barrel of less than eighteen inches in length' at this time has some reasonable relationship to the preservation or efficiency of a well regulated militia, we cannot say that the Second Amendment guarantees the right to keep and bear such an instrument.

*Miller*, 307 U.S. at 178. The Court then affirmed that holding in *Heller*: "We therefore read *Miller* to say only that the Second Amendment does not protect ... short-barreled shotguns." *Heller*, 554 U.S. at 625; *see also Thompson/Center Arms Co.,* 504 U.S. at 517 (emphasizing that the regulation of short-barreled rifles "addresses a concealable weapon likely to be" used for criminal purposes); H.R. Rep. No. 1337, 83d Cong., 2d Sess., A395 (1954).

However, in the wake of the *Bruen* decision, criminal defendants across the country are challenging the constitutionality of federal firearms offenses codified in 18 U.S.C. § 922. Challengers argue the law's recent vintage makes it suspect under *Bruen*'s text-and-history analysis. Indeed, the Federal Firearms Act was first enacted in 1938, making it relatively modern in comparison to the founding-era historical analysis required by *Bruen,* 142 S. Ct. at 2131–32.

Results in post-*Bruen* § 922 challenges vary. To date, two Fifth Circuit panels have ruled on such challenges. In *U.S. v. Avila*, in a per curiam opinion, a three-judge panel rejected a *Bruen* challenge to one of the provisions at issue in the case at bar—§ 922(n), which criminalizes receipt of a firearm by a person under felony indictment. No. 22-50088, 2022 WL 17832287 at *2 (5th Cir. Dec. 21, 2022). Because the defendant did not challenge the law's constitutionality at trial, the court applied plain error review. *Id.* at *1. The panel affirmed the district court, finding a lack of binding precedent made the defendant's challenge fail on plain error review. *Id.* Most recently, a Fifth Circuit panel considered the constitutionality of § 922(g)(8), which criminalizes possession of a firearm by a person subject to a domestic violence protective order, on de novo review. *U.S. v. Rahimi*, 59 F.4th 163 (5th Cir. 2023). Applying *Bruen*, the court found § 922(g)(8) to be inconsistent with the Nation's historical tradition of firearm regulation and, therefore, unconstitutional. *Id.* at *10.

The *Rahimi* court concluded *Bruen* represents an intervening change in law which renders § 922(g)(8) unconstitutional, overturning pre-*Bruen* Fifth Circuit decisions to the contrary. *Id.* at *2. The *Rahimi* court rejected the Government's argument that people subject to domestic violence protective orders are not the type of "law-abiding citizens" protected by the Second Amendment. *Id.* at *4. Finding that such people are covered by the Second Amendment's plain text, the *Rahimi* court went on to assess the government's proffered historical analogues to § 922(g)(8), ultimately finding they failed to meet the test set forth in *Bruen*. *Id.* at *7.

Because Mr. Miller, a non-felony citizen of the United States, neither under indictment nor restraining order when he possessed the weapon at issue is undisputedly a person protected by the Second Amendment's plain text, one must apply *Bruen's* framework for Second Amendment analysis to the possession of a short-barreled rifle. *Bruen* articulated two analytical steps: First,

courts must determine whether "the Second Amendment's plain text covers an individual's conduct[.]" 142 S.Ct. at 2129-30. If so, then the "Constitution presumptively protects that conduct," and the government "must justify its regulations by demonstrating that it is consistent with the Nation's historical tradition of firearm regulation. *Id*. at 2130. "Only then may a court conclude that the individual's conduct falls outside the Second Amendment's unqualified command." *Id.* (internal quotation marks omitted).

To carry its burden, the government must point to "historical precedent from before, during, and even after the founding [that] evinces a comparable tradition of regulation." *Id*. at 2131-32 (internal quotation marks omitted). "[The courts] are not obliged to sift the historical materials for evidence to sustain [§ 922(g)(1)]. That is [the Government's] burden." *Id.* at 2150. *See Rahimi*, 10-11.

Although in *Heller*, the Supreme Court explained that *Miller* stands for the proposition "that the Second Amendment does not protect those weapons not typically possessed by law-abiding citizen for lawful purposes, such as short-barreled shotguns." 554 U.S. at 625, 128 S.Ct. 2783, this holding is in doubt in light of the Supreme Court's subsequent decision in *Bruen*. While *Bruen* dictates "the Second Amendment protects the possession and use of weapons that are 'in common use at the time,' " *Bruen*, 142 S.Ct. at 2128 (quoting Heller, 554 U.S. at 627 (*quoting Miller*, 307 U.S. at 179)), the Court also stated:

> After holding that the Second Amendment protected an individual right to armed self-defense, we also relied on the historical understanding of the Amendment to demark the limits on the exercise of that right. We noted that, "[l]ike most rights, the right secured by *the Second Amendment is not unlimited.*" ... "From Blackstone through the 19th-century cases, commentators and courts routinely explained that *the right was not a right to keep and carry any weapon whatsoever in any manner whatsoever and for whatever purpose.*" ... For example, we found it "fairly supported by the *historical tradition of prohibiting the carrying of 'dangerous and unusual weapons'* " that the Second Amendment protects the possession and use of weapons that are "in common use at the time."

*Id.* at 2128 (first *quoting Heller*, 554 U.S. at 626–27; then *quoting Miller*, 307 U.S. at 179) (emphasis added) (internal citations omitted).

The question for this Court, therefore, is whether a short-barreled rifle is a dangerous and unusual weapon at the time the Second Amendment was enacted, and the historical records show that it was not. The blunderbuss, for example, was commonly used during the American Revolution. *See eg.*, https://www.americanrevolutioninstitute.org/recent-acquisitions/english-blunderbuss/  A blunderbuss, a predecessor of the shotgun, is a muzzle-loading shoulder weapon with a flared muzzle. One version of the English blunderbuss, which "persisted in England into the early 1700s," features a barrel length of 15 ¼ inches but an overall length of 31 inches. George C. Neumann, The History of Weapons of the American Revolution 124 (1967). Another version, typically used by the navy during the same time, had a barrel length of 19 ⅞ inches and an overall length of 33 ⅞ inches. *Id.* Others from the mid-1700s had barrel lengths ranging from 12 ⅛ to 22 ⅞ inches, and overall lengths between 31⅛ and 39 inches. *Id.* at 124–28. *Blunderbuss*, Britannica, https://www.britannica.com/technology/blunderbuss. Thus, many of these firearms, |would qualify as short-barrel firearms at the time of the ratification of the Second Amendment.

## Conclusion

WHEREFORE, Garret Miller, respectfully requests this Court to dismiss the indictment.

Respectfully submitted,

/s/ Franklyn Mickelsen
Franklyn Mickelsen
TX Bar No. 14011020
Broden & Mickelsen
2600 State Street
Dallas, Texas 75204
(214) 720-9552
(214) 720-9594 (facsimile)
mick@texascrimlaw.com


/s/ F. Clinton Broden
F. Clinton Broden
TX Bar No. 24001495
Broden & Mickelsen
2600 State Street
Dallas, Texas 75204
(214) 720-9552
(214) 720-9594 (facsimile)
clint@texascrimlaw.com


Attorney for Defendant
Garrett Adam Miller

## CERTIFICATE OF CONFERENCE

I, Franklyn Mickelsen, certify that on April 21, 2023, I conferred with AUSA Joseph Maliolo and he is opposed to this motion.

/s/ Franklyn Mickelsen
Franklyn Mickelsen

## **CERTIFICATE OF SERVICE**

    I, Franklyn Mickelsen, certify that on April 21, 2023, I caused the foregoing document to be served via electronic filing on all counsel of record.

                                     /s/ Franklyn Mickelsen
                                     Franklyn Mickelsen